Good morning, Your Honors, and may it please the Court, I'm Mark Ebert and I represent Mr. Flournoy. The state says in its brief that criminalist Rogala testified to eight events regarding DNA tests linking Mr. Flournoy to the alleged victim, L.M. There's no dispute that three of those events related to the DNA test on two sperm that criminalist Dutra performed by himself and that Rogala had no personal relationship to whatsoever aside from reading Dutra's reports in preparation for trial and telling the jury what Dutra found included. Could I ask you just a threshold question, I guess? As I went through the closing argument and looked at the transcript, it looked like that the theory at trial was that Mr. Flournoy had it wasn't that he didn't have sex with the woman, but that she had indicated by her actions and behavior that she consented. And so in reading that theory, the question that came to mind was how could this, even if there was an error, how could this possibly be prejudicial? Actually, Your Honor, the defense counsel in pretrial motions, and I cited in my brief where that happened, said that initially his defense was going to be lack of penetration, in other words, lack of rape, lack of sexual intercourse. And it somehow developed through the trial that that changed. And I would submit that it was because of the DNA evidence that he had to change his defense, that, in other words, he had a defense, a very clear defense that was very viable that was made nonviable by this DNA evidence. Well, how? Because the DNA evidence was what the State relied on to prove penetration and rape, which is what was required. How does DNA evidence prove penetration? Because they found sperm, because they found... That's something different. Right. You can find sperm without knowing anything about the DNA. Right. So penetration would be established by finding sperm. Whose sperm it was doesn't establish penetration. It establishes identity, but identity is not at issue. Well, actually, I think the location of the sperm that was found probably did and was argued to. But that's not DNA. That's location of the sperm. No, but it still has to be shown whose sperm that is. And that was Mr. Flournoy's sperm only, according to the DNA. I mean, you could make the argument, I guess, that, well, the sperm that was found in that location belonged to somebody else. But was there a defense that she had relations with somebody else in the time period? There's no evidence that she had relations with anybody else. But the evidence that she had sex with Mr. Flournoy was based on only two things, LM's testimony, which I set out in the brief as to why that was. I mean, she lied about that to at least ten people, including numerous police officers. And the rest of it was the DNA evidence. Well, wait, wait, wait. So it's coming back to me that she refused to let them do a vaginal test. And so what they had found was an external genital swab and two sperm in her underwear. So how does that prevent? And an anal swab, external genitalia and an anal swab, yes, where the sperm was found. How is that inconsistent? Well, I guess, Your Honor, if what you're saying is that there was insufficient evidence to prove penetration, I can't dispute that. However, that is not the defense. That was not based on direct appeal and was not part of the certified issue. But for purposes of prejudice, I guess I'm still trying to understand how the testimony was prejudicial. If it made why it would have made him change his theory, it doesn't appear that it would have. Because his sperm, according to the DNA, was found in her panties and on her genitalia and or anus. That's why. I mean, that certainly supports the argument that there was penetration, which is what was required here. So, anyway, three of those DNA test, quote, events that the State relies on were events that Rogala had no relationship to whatsoever. The other five were events in which she had a relationship to only one link in a rather lengthy chain. For example, Rogala testified that a nurse named Odom took the breast swab, that criminalist Ballard prescreened it, that she did the first DNA test on it, and that someone, we don't know who, ran a DNA database computer search, and that identified Mr. Flournoy as, and I'm quoting from the State Court of Appeals, factual statement here, a, quote, possible match. So at this point, when the State Appeal Court decided, the only Supreme Court decision clearly established precedent was Crawford. And Crawford is pretty wishy-washy about what constitutes testimonial evidence. It says, well, I won't give you a definition, but this was. What you need to argue, if I'm understanding this right, is that the State Court was unreasonably applied Crawford or was contrary to Crawford in saying that this testimony wasn't testimonial under Supreme Court precedent. Under as a business record or as in terms of being admitted through an expert witness. Well, that would be a sort of hearsay issue, but we have to say that it violated the Confrontation Clause, right? Well, the Confrontation Clause relates to hearsay, I mean, to out-of-court statements that they cannot cross-examine. And when it comes to non-testimonial statements, there are common law exceptions that allow in hearsay evidence. But the court in Crawford said that when it comes to testimonial statements, the Confrontation Clause does not allow those exceptions to be applied. And first of all, the definition of testimonial statements in Crawford, I think, is so clear that it really couldn't be read any other way. These are criminalists. It's their job to prepare reports. The F. Melendez was a 5-4 decision. And in Bold Cummings, Justice Sotomayor seems to indicate that these issues remain open questions. What I would point to in both Melendez-Diaz, which said that the business records exception doesn't apply, and that eliminates one of the two grounds the trial court and court of appeal relied on here, and in Bold Cummings, which says that you can't use expert witnesses to essentially get this in through the back door, is that both of those cases said that one, in Melendez-Diaz, that this is simply a straightforward application of Crawford. And, you know, I don't see how it could be read any other way, given the definition of testimonial and what these people did for a living. I mean, that's why they prepared these reports, was for use in a criminal trial. So Melendez-Diaz itself says this is a straightforward application of Crawford. And in Bold Cummings, the court also says, you know, you can't get this in through the back door through an expert witness, and says, quote, our precedent cannot sensibly be read any other way, end quote. And, yeah, it may be one or both of them might have been a 5-4 decision, but that is the decision of the Supreme Court. And then, of course, many years later, though. Saying you can't reasonably apply it any other way. So what do we make of Justice Sotomayor and her concurrence distinguishing the other situations that are similar to this one? So she says, this is not a case in which the person testifying is a supervisor, reviewer, or someone else with a personal, albeit limited, connection to the scientific test at issue. And she goes on to say, nor is this a case in which an expert witness was asked for his independent opinion about underlying testimonial reports that were not themselves admitted into evidence. Suggesting that she at least thought those cases were distinguishable. And so it's troubling to me that many years before either of those decisions, we would say that the State court was unreasonable in not holding that Crawford was applicable to this testimony. My response to that, Your Honor, is that this is not the different case that Justice Sotomayor was talking about. This is not a supervisor. It was a peer. She did not at any time, other than the one, quote, the preliminary test that showed a possible match, she did not at any time have any opportunity to observe or to oversee the actual testing that Dutra or Ballard did. In other words, she was referring only to their reports. The only review she ever did was one report that was a, quote, technical review and, quote, done by a peer, not by a supervisor. I mean, this is basically trying to use a title to get into, again, through the back door something that she didn't personally have anything to do with. And she was only one link in a chain of five different people in one machine. Also, I would point out, and I wanted to save some time for rebuttal, but that some of Dutra's reports were admitted. They were, and the State concedes that, that both directly through her testimony and at pages 8 through 9 of my reply brief, if I cite, I think, 10 instances of that, and also through a chart which has Dutra's results on it that was admitted and shown to the jury. Thank you. Good morning. May it please the Court. Deputy Attorney General Steve Odding on behalf of Respondent. As this Court's question suggests, there are a number of different directions that this Court could take in rejecting Appellant's claim. On the one hand, there is no clearly established guiding, federal United States Supreme Court precedent that would control the instant matter. And as a result, it cannot be said that the California State Court of Appeal was objectively unreasonable in reaching the conclusion it reached. On the other hand, Appellant's claim is also procedurally barred based upon the failure to raise a contemporaneous objection in the State court, let alone a contemporaneous objection based upon constitutional grounds. And still finally, of course, even aside from all these issues, the matter is simply harmless as a result of the approach that was taken during the trial court, during the trial, rather. As to that last point, counsel for Appellant has argued that the defense counsel at trial is required to shift gears as a result. Is that prejudice? That is simply incorrect as a factual matter, Your Honor. At the in limine proceedings, counsel specifically stated that he did not want to challenge the DNA because he had a very small needle that he had to thread. Namely, he knew that his client, defense counsel knew that his client was in the state system because of his prior offenses, and he didn't want the jury to find that out. So he didn't want to challenge the notion that there was a hit under the state prison system. And so he didn't want to challenge the DNA. And as to the matter of consent, the fact that there was DNA on external genitalia or in the underwear did not ipso facto demonstrate that there was no penetration in and of itself. He still could have argued that, and the DNA wouldn't have mattered. He could have threaded that needle had he so chosen. He decided not to, and reasonably so, because that would have undermined his primary defense of consent. It would have been a very difficult argument for him to argue to the jury that there was no sex, but if there was sex, it was consensual. And this was not an argument that he chose to make, and that's simply one of attorney tactics that we should not second guess on Federal habeas corpus. Turning then to the first issue as to the clearly established law, Justice Sotomayor's concurring decision in Bullcoming is dispositive of this. She states two situations that apply to the present case as to why this law is simply not settled. There is no clearly established law in this matter. First of all, and I would like to quote this because I believe that counsel misstated it. I smile because you tell us that her concurring opinion is dispositive. It's all over. But she didn't get enough votes to make it more than her concurring opinion. So go ahead with the argument. Well, Your Honor, if I may take that. It's an interesting point. It's fairly unique, and I would agree, because the point is, is that her concurring decision was the deciding fifth vote. And she said specifically, let's talk about what this case does not hold. And here's what it does not hold. It does not involve a, quote, supervisor, reviewer, or someone else with a personal, albeit limited, connection to the scientific test. It doesn't matter whether this person is a peer or a supervisor. The point is, what they were carving out was a situation where, as is often the case, the state courts rely upon Cellmark, which is a DNA lab on the East Coast. And perhaps a Cellmark test comes back, and then someone from the San Diego Crime Lab comes up and testifies to that. That's a different situation than what we have here. This is someone working in the same crime lab who does a peer review of the data. And that's the situation that she was carving out. We're not talking about just some expert getting up there and pontificating regarding another test. We're talking about someone within the same lab who is a peer reviewer of that very test. And that's the situation that she carves out. The second situation is that this is not an expert who gave an independent opinion in bull coming. Rather, their certified reports, essentially Melendez-Diaz's declarations, Raffa Davis's were admitted. Here, there was only one portion of, and not a whole bunch as counsel would lead this court to believe, there was only one portion of Mr. Dutra's report that was admitted as to the YSTR testing. That was Exhibit 16. The YSTR testing, as this Court is aware, is much less specific than the complete STR testing that was done and what was performed by criminalist Rogala. That's dispositive of this matter. She performed the DNA testing on the STR testing herself. She came up with a profile. The state data bank came back and matched that profile to Appellant. End of story. There was no objection to that, and as I've already said, the reason there was no objection was because he did not want to draw that out in front of the jury that his client was in the state database, obviously because he's a prior offender. So there was no objection. And San Diego has a policy of doing confirmation tests, but that's simply a policy. Right there, there's enough indication as to why he did not choose to challenge this information. They had reason to believe that there was already DNA that matched him, and the rest is just confirmation. Turning then to the second point, this Court could also go a different direction and simply find that this matter is procedurally barred. This Court's decision in Sheehan v. Shmersky is dispositive, once again, of this case. This panel is bound by that other panel's decision. California has a contemporaneous objection bar that is independent and adequate, and that case specifically involved a situation similar to this where there was a state court objection but not a Federal due process objection. And a different panel of this Court found that California's contemporaneous objection was independent and adequate in that circumstance. One of the things that's hard here is that the Confrontation Clause and hearsay used to seem congruent, coterminous, and Crawford separates them, and now they're slowly evolving back together again. I mean, you cite the Justice Sotomayor's concurring opinion, and she talks about looking to the traditional exceptions to the hearsay rule as informative of a Confrontation Clause violation. Is the objection really – is the objection that was made, the hearsay objection, substantively different from what could have been articulated as a Confrontation Clause objection? Yes, Your Honor, I would suggest it is. And, again, I would also suggest that the defendant cannot have his cake and eat it, too. He cannot tell the states that they were bound by the Crawford and then Melendez-Diaz, which, of course, hadn't even come out at the time, and then at the same time say that he's not bound, that his objection was sufficient under state hearsay grounds. Under state law, which is interesting, the business record exception does not have a litigation component such as what was litigated in Melendez-Diaz. Under the state business record exception, there is no anticipation of litigation requirement or prohibition. And so when he says that this is a hearsay objection, state court says, overruled. It comes within the business records exception. End of story. And now to tell the state court, well, you should have been anticipating that what I was really talking about was the Confrontation Clause, I don't believe that, once again, that he can have his cake and eat it, too. Either he is bound by the state of the law and knowing the state of the law at the time, or the state court is not. Either way, he can't have it both ways. Turning then to the ineffective assistance of counsel, I touched upon this somewhat at the beginning. Counsel had tactical reasons why he did not want to contest the DNA. It was clear, it was evident, that LM had been in this apartment. She had ID'd the defendant. She went by and she was able to identify the apartment. There was a woman matching her description who was seen running out of the apartment with the defendant in tow on the night of the rape. She was able to describe records in the apartment, vinyl records, and when they went in and did the search, they found several of the vinyl records 15 months after the event. It's clear defense counsel had tactical reasons why he did not want to contest the fact that there was sex. He took a different approach and said it was consensual. The jury rejected that approach. Now, appellants is attempting to try a new tact on appeal, but that simply doesn't work. The question is, was the state court objectively unreasonable? And the answer is no. There were tactical reasons for him not to have made this objection, and those tactical reasons were valid. And unless the Court has any further questions. Thank you. Have a good night. We'll give you a minute if you have something you absolutely must say. Your Honor, thank you. I'll be as quick as I can. First of all, it's at page RT4. The trial counsel told the state trial court that his defense was lack of penile penetration, and so that was his defense going into the case. It's on the record. As for the attorney tactics, the procedural bar issue, first of all, an adequate objection was made under California law based on the cases that I cited, and also under this Court's decision in Melendez-Plyler, in which this Court said that that procedural bar was not adequate and, you know, properly, consistently applied. But also, if the California courts were correct that this issue was procedurally barred because the lawyer didn't object properly or adequately enough when he said, you know, the second certified issue in this case because it led to a procedural bar. So it's either it's ineffective assistance or it's a confrontation clause violation that was properly preserved. And, by the way, I want to say once again that the only link in the chain that Rogala had any personal relationship to was her one DNA test, and that was identified by the California Court of Appeal in its opinion as a, quote, possible match, end quote. And, according to them, it didn't become a firm match until Dutra's test, which Rogala did not participate in. Thank you. Thank you. I thank both counsel for the helpful argument. The case just argued is submitted.
judges: Farris, Clifton, Ikuta